**Ronald Eugene HENRY**

v.

**DEPARTMENT OF the NAVY, Board for Correction of Naval Records, and the Secretary of the Navy.**

**Civ. No. LR–C–93–865.**

United States District Court,
E.D. Arkansas,
Western Division.

March 15, 1995.

James W. Stanley, Pierce, Stanley & Robinson, North Little Rock, AR, for plaintiff.

Ronald Eugene Henry, pro se.

Paula Casey, U.S. Atty., Richard M. Pence, Jr., Asst. U.S. Atty., Little Rock, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

The saga of plaintiff, Ronald Eugene Henry, to upgrade his 1969 undesirable discharge from the United States Marine Corps continues. On February 5, 1991, this Court issued an Order finding that plaintiff was entitled to the relief requested, that is an upgrade of his discharge to honorable. *Henry v. Department of Navy*, 755 F.Supp. 1442 (E.D.Ark. 1991). The Eighth Circuit Court of Appeals vacated the Court's opinion with directions to dismiss the petition, and remand the case to the Board of Corrections for Naval Records ("BCNR") for further proceedings. *Henry v. Department of Navy*, 985 F.2d 569 (8th Cir.1992) (Table, No. 91–1841).[1]

---

1. The Eighth Circuit Court of Appeals found that the Court had erred in taking new evidence and basing its review of the record in part on the new evidence. However, the BCNR stated that in light of the new evidence presented before the

The BCNR denied plaintiff's request for correction of his record on September 2, 1993, and on December 3, 1993, plaintiff filed a *pro se* complaint seeking review of the BCNR decision.[2] Plaintiff ultimately retained counsel. Both plaintiff and the BCNR have filed motions for summary judgment.

The lengthy factual background and the difficult path plaintiff has taken to upgrade his military discharge are set out in the Court's earlier decision. 755 F.Supp. at 1443–1448. The Court will continue where it last left off.

After the remand, plaintiff's counsel forwarded to BCNR certain documents for the BCNR's consideration, including the transcript of the District Court proceedings, the Court's order, and plaintiff's medical record. Plaintiff also filed a memorandum to the BCNR in support of his position. After a review of the record, BCNR denied plaintiff's application for an upgrade on September 28, 1992.

In its determination that there was insufficient evidence to establish the existence of probable material error or injustice, the BCNR considered new evidence from Mr. Iorio (a sworn statement and memorandum outlining a telephone conversation between Iorio and A. Goldsmith of the BCNR), a written advisory opinion from the Chairman of the BCNR regarding recruitment qualifications, and excerpts from an article entitled "Marines and Military Law in Vietnam: Trial by Fire."

By letter dated October 26, 1992, plaintiff objected to BCNR's consideration of evidence outside of the evidence considered by the Court. Additionally, plaintiff objected to the lack of notice from BCNR regarding the new evidence, and the lack of opportunity to rebut the evidence.

BCNR agreed to reconsider plaintiff's application because of his objection. Plaintiff was notified on May 7, 1993, of BCNR's decision to reconsider and was provided the opportunity to submit additional evidence.

Plaintiff did not submit any additional materials, and on September 2, 1993, BCNR denied plaintiff's application for a discharge upgrade. BCNR again found the evidence submitted to be insufficient to establish existence of error or injustice. BCNR found that plaintiff failed to establish that he was denied due process or that his request for an undesirable discharge in lieu of court-martial was involuntary.

■ BCNR may correct a military record when it "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The BCNR decisions "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 302, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983).

The Court must find, based on the record before it, that the BCNR's decision is arbitrary and capricious and not supported by substantial evidence. In this instance, BCNR has attempted to address all the concerns of the Court in its earlier decision. Yet, try as it might, it has failed to convince this Court that plaintiff's decision to accept the undesirable discharge was made knowingly, intelligently, and voluntarily. Furthermore, the Court finds that BCNR's decision that the undesirable discharge was not inequitable under the circumstances is arbitrary and capricious.

■ As discussed in the earlier decision, at the time of plaintiff's discharge the regulations authorized five categories of discharge: honorable, general, undesirable, bad conduct, and dishonorable. 32 C.F.R. § 730.51 (1969). The dishonorable discharge and bad conduct discharge are expressly punitive and can be awarded only upon conviction or a plea of guilty in a court-martial proceeding. The other three types of discharge can be awarded administratively. An undesirable discharge, such as that received by plaintiff, "carries with it both a serious stigma in the form of injury to reputation and loss of employment opportunities, ... and it may also

---

district court, it would agree to a remand of Henry's case to the BCNR for further review.

2. Henry's complaint seeks a declaratory judgment, mandamus and injunctive relief, and review of the decision under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

involve loss of entitlement to federal and state veterans benefits." *White v. Secretary of Army,* 878 F.2d 501, 503 (D.C.Cir.1989).

An undesirable discharge awarded in lieu of a court-martial "resembles plea bargaining but without the supervision and protection in the acceptance of pleas provided by a military judge under the UCMJ [Uniform Code of Military Justice]." Lunding, *Judicial Review of Military Administrative Discharges,* 83 Yale L.J. 33, 36 (1973).[3]

■ Because of the absence of due process protection present in the guilty plea situation, the Court must carefully scrutinize the record to determine whether plaintiff's request for the undesirable discharge was truly knowing and voluntary.

■ A number of factors lead the Court to conclude that, upon looking at the circumstances as a whole, plaintiff did not knowingly, voluntarily, and intelligently waive his right to a court-martial. First, the record reflects that plaintiff was not advised of the charges against him. BCNR erroneously concludes that the Unit Punishment Book indicates that plaintiff was notified of all charges on October 3, 1969. (A.R. 000014). However, the exhibit from the Unit Punishment Book reveals that plaintiff was informed of charges on September 30, 1969, and told that those charges were referred to a special court-martial. The additional charges concerning the assault on Corporal Yardy were added after plaintiff signed the Unit Punishment Book (A.R. 00284–285).

■ Recognizing that its finding might be erroneous, BCNR then determined that whether charges are written is "irrelevant." (A.R. 000014). However, *notice of the charges against an accused is one of the fundamental rights of due process.* An accused cannot waive rights if he is not fully informed of the charges against him.

■ Second, the form which plaintiff was required to sign did not adequately inform plaintiff of the charges or, more importantly, of the rights he was waiving. The document is entitled Request for Undesirable Dis-

charge for the Good of the Service to Escape Trial by Court–Martial. That form, signed by plaintiff on November 12, 1969, and witnessed by Captains Merrill and Iorio provides as follows:

1. Article 31, UCMJ, having been read and explained to me, and with full understanding of my rights, I hereby request discharge for the good of the service pursuant to the provisions of paragraph 6021 of reference (1).

2. This request is based on my commission of the following offense(s) in violation of Article(s) 86, 91, 92, and 128, Uniform Code of Military Justice: was UA from 9 September to 30 September 1969 and 4 September to 5 September 1969; willfully disobeyed an order of my superior Non-commissioned Office on 1 October 1969; violated a lawful general order on 2 October 1969; committed an assult [sic] on a Non–Commissioned Officer by hitting him in the face with a rifle and broke his nose. I understand that my commission of the following offense(s) renders me triable by court-martial and that a maximum permissible punishment for such offense(s) includes a Bad Conduct Discharge.

3. Prior to submitting this request I have been afforded the opportunity to consult with counsel and I have consulted with the following counsel and I am entirely satisfied with their advise:

. . . . .

[The names, along with rank, and serial number, of Michael P. Merrill and William E. Iorio are included]

4. I understand that my discharge from the Naval Service, effected by acceptance of this request, will be with an Undesirable Discharge which will be issued without referral to or consideration of my case by an Administrative Discharge Board. I understand that an Undesirable Discharge is a discharge under other than honorable conditions and that as a result of such discharge I may be deprived virtually of all rights as a veteran under both Federal and State Legislation, and that I may expect to

---

3. For further discussion of the safeguards present in the plea bargain situation in the military,

see Brian B. McMenamin, *Plea Bargaining in the Military,* 10 Am.Crim.L.Rev. 93 (1971).

encounter substantial prejudice in civilian life in situations wherein the type of service rendered in any branch of the Armed Forces or the character of the discharge received therefrom may have a bearing.
5. My counsel has explained to me and I fully understand the purpose and scope of the Navy Discharge Review Board and the Board of Correction of Naval Records. He has further advised me of my rights under the provisions of subparagraph 6023.1a of reference (a). I hereby waive all of my rights enumerated under this subparagraph. He has further advised and explained to me that if this request is approved, that I will receive a discharge under other than honorable conditions without Administrative Discharge Board action and the possible consequences thereof. As stated in paragraph 4 above, I fully understand the effect of this request. A.R. 001122–23.

For the non-legal mind, particularly an individual with limited intellectual ability (see discussion *infra* ), the document presents a relatively unclear explanation of what rights are being waived. The inadequacy of the waiver form is exacerbated by reference to other forms and regulations which are not included in the initial waiver and to which plaintiff did not have access.

The waiver form refers to the provisions of paragraphs 6021 and 6023.1a of the MARCORSEPMAN. These sections provide as follows:

6021 REQUEST FOR DISCHARGE FOR THE GOOD OF THE SERVICE
1. ... [A]ny Marine commander exercising general court-martial jurisdiction, without administrative discharge board action, may authorize or direct the discharge, with an undesirable discharge, of any member who submits a request for discharge for the good of the service ... Such requests may be submitted and processed where the member's conduct renders him triable by court-martial for an offense punishable by a punitive discharge ... provided that the member has been afforded the opportunity to consult with counsel, and the member certifies in writing his understanding that:

a. He will receive a discharge under other than honorable conditions.

b. He understands the adverse nature of such a discharge.

c. He understands the possible consequences thereof.

Notwithstanding a member's submission of a request for discharge for the good of the service, the appropriate discharge authority may disapprove such request and either direct the member's retention, or refer the member's case to an administrative discharge board.

2. For the advice to be given a member who requests discharge for the good of the service, and for the recording of such advise, see subparagraphs 6023.1a and 6023.1c.

. . . . . . .

6. A member who submits a request for discharge for the good of the service will complete such request by signed statement in tenor as follows, witnessed by at least one witness:

[The regulations then set forth language to be included in a form which is substantially similar to the first four paragraphs in the Request Form signed by plaintiff on November 12, 1969]

6023 ADVICE TO A RESPONDENT
1. No administrative discharge under conditions other than honorable ... will be effected unless the respondent is tendered the advice prescribed below:

a. *Advice to respondent under military control.* In each case where a member on active duty and under military control ... requests a discharge for the good the service within the purview of paragraph 6021, the officer empowered to convene an administrative discharge board having jurisdiction over the member will take or cause to be taken the following action:

(1) Notify the member, in writing, of the proposed discharge action and the basis therefor.

(2) Advise the member of the purpose and scope of the Navy Discharge Review Board and the Board for Correction of Naval Records ...

(3) Advise the member that he has the following rights, which unless he waives such rights in writing, will be afforded to him:

(a) Present to and have his case considered by an administrative discharge board composed of not less than three officers, at least one of whom would be a field grade officer;

(b) Appear in person before such board, subject to his availability;

(c) To be represented by military counsel, who will be a lawyer within the meaning of UCMJ ...

(4) Advise the member that if he does not waive a hearing before an administrative discharge board, and upon the hearing of his case before such board, he will be entitled to those rights set forth in subparagraphs 6024.3b through 6024.3c, 6024.3f, .... The advice as to the respondent's rights contained in the cited subparagraphs of paragraph 6024 may be given in a summarized form. Further advise the member that before waiving any of these rights, in writing, it would be to his advantage to consult with counsel and that he will be given the opportunity to do so.[4]

(5) Advise the member who indicates that he wishes to submit a request for discharge for the good of the service, pursuant to paragraph 6021 that, if such request is accepted, he may receive a discharge under other than honorable conditions without administrative discharge board action, and further advise him of the adverse nature of such discharge and the possible consequences thereof. Before a member is permitted to actually submit a request for discharge for the good of the service, he will be advised that it would be to his advantage to consult with counsel and he will be given the opportunity to do so.

.    .    .    .    .

c. *Recording advice given respondent under military control.* In each case where a member on active duty and under military control ... requests discharge for the good of the service within the purview of paragraph 6021 and after the advice prescribed in paragraph 6023.1a has been given and the opportunity consult counsel has been afforded, the permanent record will contain either the following, or in lieu thereof, a certification by the officer taking the action prescribed by subparagraph 6023.1a that such action has been accomplished:

(1) A copy of the written notification to the member of the basis for the proposed discharge action.

(2) The member's written acknowledgement of the advise given him of the purpose and scope of the Navy Discharge Review Board and the Board for Correction of Naval Records.

(3) The member's written acknowledgement that he was given and understands the advice prescribed in paragraphs 6023.1a and/or (4).

(4) The member's written waiver of any or all of the rights prescribed in subparagraph 6023.1a(3) and/or the member's written request for discharge for the good of the service, together with the member's written acknowledgement that he was afforded the opportunity to consult with counsel prior to effecting such waivers and/or request for discharge. The member's written acknowledgement will include the fact that he either chose not to consult with counsel prior to effecting such waivers and/or request for discharge, or, if he did so consult with counsel, the specific identity of the counsel and his legal qualifications.

A.R. 001129–34.

From the above, it can be seen that a number of important, specific rights are set

---

4. The record does not indicate what rights are set forth in subparagraphs 6024.3b through 6024.3c, 6024.3f, 6024.3n, 6024.3o, 6024.3r, 6024.6, and 6024.7. BCNR, in its decision, inserted the editorial comment that these subparagraphs pertain to "the procedural rights afforded by the MARCORSEPMAN to those who elect such a board." A.R. 000009. That neither the record before the Court nor plaintiff's military record contain an explanation of what important procedural rights are involved lends further credence to plaintiff's assertion that he was not fully advised of his rights, and that he did not sign the waiver knowingly.

forth in subparagraph 6023.1a(3), and the boilerplate language in the Request for Discharge form to which plaintiff acquiesced hardly satisfies the Court that plaintiff actually was informed of all the rights. Indeed, the provisions regarding the waiver of the administrative discharge hearing are most confusing.

■ Plaintiff's Exhibit No. 11 is a form describing in clear language the rights that an individual would waive. The form describes the administrative discharge board, the procedures and rights available, and an acknowledgement by the individual that he has been advised of the rights and waives them (A.R. 000449–550). The record does not contain such a form signed by plaintiff. Had evidence been presented that plaintiff had signed such a form, the Court would be more persuaded that plaintiff understood more clearly what rights he was waiving and the effect of his waiver. However, in the absence of such evidence, the Court is not persuaded that plaintiff was adequately advised of his rights.

Undoubtedly, Captain Iorio, and Captain Merrill were competent defense counsel. Iorio believed that he had fully explained everything to plaintiff. However, given the heavy caseload Iorio had, along with his military duties, it is unlikely that he was able to devote the time and energy necessary to thoroughly investigate plaintiff's case and to fully and clearly explain to plaintiff the ramifications of agreeing to an undesirable discharge for the good of the service. Thus, the Court cannot agree that plaintiff understood the significance of the form he signed.

Third, BCNR's conclusion regarding the confusion concerning the impending court-martial is not supported by the evidence. As noted in the previous decision, plaintiff signed the waiver on the assumption that he would have a trial. BCNR found that the court-martial date had been postponed, but there is no evidence to conclude that plaintiff was aware of the postponement. Thus, plaintiff was confused, and believed at the time, that the trial date had come and gone, and that he would not be going to trial.

In sum, the Court finds that plaintiff's waiver was not knowing, intelligent, and voluntary. BCNR's finding to the contrary is not supported by substantial evidence.

■ The Court also finds that BCNR did not adequately consider plaintiff's age, intelligence level, test scores, emotional state, the circumstances surrounding the granting of his undesirable discharge, as well as the racial atmosphere in plaintiff's unit. Plaintiff was seventeen years, 20 days old at the time of enlistment. The age restriction of seventeen years, eight months had been removed less than six months previously (A.R. 000106–107). He was described as "still [an] adolescent" in the psychiatric report of October 1, 1969.

Plaintiff received a score of 18 on the Armed Forces Qualification Test (AFQT) and 81 on the general classification test (GCT). He was in the next to lowest mental category. Clearly plaintiff's intellectual ability was somewhat limited, which impaired his ability to understand the procedural and legal intricacies concerning a waiver of his rights.

Plaintiff's emotional status at the time must also be considered in conjunction with his intellectual capabilities. The medical records reveal that plaintiff was extremely anxious and agitated at the time of his confinement and prior to executing the form. He was referred for a psychiatric evaluation on October 1, 1969 (A.R. 000216). On October 13, 1969, he reported hearing his mother's voice at night (A.R. 000204).

The record further reveals that plaintiff was concerned about racial problems in the unit, which admittedly existed. The racism present in the unit further aggravated plaintiff's anxiety and frustration.

There can be no doubt that in plaintiff's ability to execute a knowing and voluntary waiver was impeded when considering all the factors combined. Plaintiff, immature, emotionally distraught, and intellectually limited, was forced to make a momentous decision which would adversely impact his life. He made that decision without the judicial safeguards present in a plea bargaining situation, which would have ensured that plaintiff did, in fact, know what important rights he was waiving and the ramifications of the waiver.

Furthermore, BCNR failed to adequately consider the positive aspects of plaintiff's service. He was in the Marine Corps for almost 1½ years. He served in a combat situation and was awarded both the National Defense Service Medal and the Vietnamese Service Medal. He was granted a full pardon by direction of the President of the United States, as provided under Presidential Proclamation 4313 of September 16, 1974. On May 13, 1976, he received a clemency discharge from the Armed Forces of the United States.

"To remove injustices is the Board's chief responsibility and constitutes its very reason for being. The [Navy] has no need of a Board that stubbornly hews to obscure decisions or slavishly follows bright-line distinctions simply because doing so relieves some agency of the difficult task of considering each case on the merits. The [Navy] needs a Board that serves the interest of justice." *Guerrero v. Stone,* 970 F.2d 626, 638–39 (9th Cir.1992). *See Swann v. Garrett,* 811 F.Supp. 1336 (N.D.Ind.1992) (correction board acts in violation of mandate to correct an error or remove an injustice and thus arbitrarily or capriciously if it does not correct blatant injustice in the record).

As the court in *Robinson v. Resor,* 469 F.2d 944, 951 (D.C.Cir.1972), noted, the Marine Corps or the BCNR never "considered that a little more compassion, a little more interest in [plaintiff's] welfare, could and should have prevented him" from executing a waiver resulting in "years of life under a stigma totally out of proportion to the totality of circumstances surrounding this case." Here, BCNR failed to weigh the factors and pressures affecting the soundness of plaintiff's judgment. The Court finds that BCNR's decision is arbitrary and capricious.

The Court finds that plaintiff is entitled to an upgrade of his discharge to honorable. Plaintiff has now waited twenty-five years for an upgrade. As discussed in its previous decision, the Court will not delay the relief to which plaintiff is entitled by remanding for further review by the agency. The Court hereby reverses the decision of the BCNR and remands this case to the Secretary of the Navy with instructions to upgrade plaintiff's discharge to honorable. *See Swann v. Garrett,* 811 F.Supp. at 1343.

Judgment will be entered accordingly.

IT IS SO ORDERED.

### JUDGMENT

Pursuant to the memorandum opinion and order entered this date, the decision of the BCNR is reversed and the case is remanded to the Secretary of the Navy with instructions to upgrade plaintiff's discharge to honorable.

IT IS SO ORDERED.