James S. STEWART, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,
Appellee.

No. 91–1779.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1991.

Decided Feb. 24, 1992.

Kenneth F. Laritz, Warren, Mich., argued, for appellant.

Eric T. Tolen, St. Louis, Mo., argued, for appellee.

Before ARNOLD,* Chief Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

BRIGHT, Senior Circuit Judge.

James S. Stewart appeals the district court's judgment affirming the decision of the Secretary of Health and Human Services (Secretary) to deny his claim for Social Security disability benefits under 42 U.S.C. § 423 (1988). On appeal, Stewart contends that the Secretary's decision was not supported by substantial evidence. We agree and, accordingly, we reverse.

## I. BACKGROUND

 Stewart filed an application for disability insurance benefits on April 1, 1986, alleging disability due to moderately severe obstructive airway disease beginning on August 11, 1980. He was fifty-four years old at the time of filing. After consideration and reconsideration, the Secretary denied the application on June 27, 1986. Stewart appealed the Secretary's decision. Following an administrative hearing on April 27, 1987, an administrative law judge (ALJ) determined that Stewart was not under a disability as of March 31, 1986— Stewart's last day of insured status for disability benefits.[1] On July 31, 1987, the Appeals Council denied appellant's request for review and, on March 14, 1988 notified him that there was no basis to vacate the previous action.

---

* The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. Insurance coverage for a claimant's disability benefits (insured status) continues for the time period in which he meets the minimum earnings requirements under the Social Security Act. Stewart's coverage ended on March 31, 1986. He must have been disabled on or before this date in order to be eligible for benefits.

Stewart filed suit in the district court for the District of Montana, which remanded the case on October 27, 1988. After a supplemental administrative hearing on April 11, 1989, an ALJ again recommended a finding of "not disabled." The Appeals Council denied appellant's request for review, leaving the ALJ's decision as the final decision of the Secretary.

The case was transferred to the Eastern District of Missouri, after appellant moved there. Each party filed a motion for summary judgment. Pursuant to a magistrate judge's recommendation, the district court granted summary judgment in favor of the Secretary on February 5, 1991. This appeal followed.

Stewart had been unemployed and receiving insurance benefits through his employer since 1980. The physician, who assessed Stewart's condition at the time of his first illness, stated that although he could not return to his former job as an auto assembly supervisor, he could perform sedentary work, but none was available with that particular employer. The benefits from his employer expired on March 31, 1986.

Stewart worked for thirteen years in the cotton industry. He then worked for sixteen years at the auto assembly plant. Both work environments aggravated his asthma condition and episodic bronchitis. He took ill and left work on August 11, 1980. Dr. R.K. Chambers, Stewart's family physician, examined Stewart. This examination revealed shortness of breath, wheezing and poor pulmonary function test results, resulting in a diagnosis of moderately severe obstructive airway disease. Dr. Chambers's report indicated that Stewart could never return to work and his condition would be aggravated by dust and fumes at work. One month later, Dr. Jack Cokrhame confirmed this diagnosis and prognosis.

Consulting physician, Dr. Anthony Dowell, reviewed Stewart's medical records and pulmonary function test data. Dowell confirmed the examining physicians' diagnosis, but suggested that Stewart would remain employable, provided that he obtained medical therapy and avoided polluted environments. In January of 1981, the medical director at the auto assembly plant, on the basis of Dr. Dowell's recommendation and some hospital tests, decided that Stewart could return to work under the following restrictions: 1) to spend one-half of his time sitting; 2) no walking over five to ten minutes consecutively; 3) engage in sitting work in well ventilated area; 4) may be offered filter mask when out in Plant 20–30 minutes at a time; 5) work in West end Plant 1 recommended. An interoffice memorandum noted the unavailability of a job with those restrictions, necessitating that Stewart continue to receive insurance benefits.

When Dr. Dowell examined Stewart in February of 1981, he diagnosed chronic asthmatic bronchitis and combined obstructive and restrictive pulmonary defects. Dowell prescribed five medications [2] to help control Stewart's condition. The same month, Dr. Chambers examined Stewart and reported severe obstructive airway disease, asthma and emphysema with a fair to poor prognosis. Chambers indicated that Stewart would never be able to return to work. In April of 1981, Dr. Dowell noted an improvement in the pulmonary condition and reported a good prognosis, but repeated his earlier diagnosis. The same month, Dr. Chambers noted minimal response to treatment and an irreversible pulmonary condition.

In August of 1981, Stewart was hospitalized with acute pneumonia. Chest x-rays revealed congestion, scarring of the lung tissue and flattening of the diaphragm, consistent with chronic lung disease. In August of 1982, and January and August of 1983, Dr. Chambers reaffirmed his diagnosis of chronic obstructive pulmonary disease and noted Stewart's inability to return to any form of employment. In August of 1982, Dr. Chambers diagnosed Stewart as suffering from rheumatoid arthritis.

Dr. Marlou Davis examined Stewart at the request of his employer's insurance company in December of 1983. Davis not-

2. Alupent inhaler and tablets, Theophylline 300, TheoDur, Vanceril inhaler and Prednisone.

ed that Stewart had difficulty walking across the room. The slightest exertion caused shortness of breath. Stewart used his neck muscles in order to breathe and required much inspiratory effort. Dr. Davis concluded that Stewart was totally disabled from his previous employment, but could perform a sedentary job with no type of ambulatory activity or work requiring the lifting of greater than five pounds.

In January of 1984, Stewart entered a Missouri hospital. Dr. Jack Cokrhame, attending physician, diagnosed acute bronchitis and bronchial asthma. In May of 1984, and January and November of 1985, Dr. Cokrhame diagnosed unimproved chronic obstructive pulmonary disease and bronchial asthma. Cokrhame noted Stewart's inability to return to any form of employment.

Between September of 1985 and May of 1986, Stewart was under the care of Dr. Timothy Adams, who diagnosed degenerative joint disease, chronic asthma and interstitial lung disease. Adams continued Stewart on all of his previously prescribed medications. Dr. Adams noted that Stewart suffered from a fairly significant disability and his long term prognosis remained stable. In June of 1986, a psychiatrist diagnosed Stewart as suffering from major depression with a guarded prognosis.

At the April 11, 1989 supplemental administrative hearing before the ALJ, Stewart testified that he had suffered from the following symptoms since prior to March of 1986: shortness of breath, pain in his left lung and back, coughing and wheezing spells, interrupted sleep, a limited ability to perform any activity on a sustained basis, depression and lack of concentration due to

his prescription medication. He admitted to activities that included: reading, watching T.V., napping, driving for short periods, attending to his personal needs, and occasionally shopping and visiting friends. Stewart stated that he could sometimes walk a block, could stand for an hour (a total of two to three hours in an eight-hour period), sit for two to three hours and lift five or six pounds occasionally.

A vocational expert (VE) then testified as to the availability of jobs that Stewart would be capable of performing. The VE defined Stewart's past relevant work as "light work,"[3] requiring an individual "to sit or to stand or walk for the better part of the day," or sitting and "lifting or carrying of up to twenty pounds occasionally or frequent lifting or carrying of up to ten pounds." In response to an inquiry from the ALJ, the VE conceded that Stewart could not return to his former occupation. The VE also defined "sedentary work"[4] as requiring "activities primarily in a seated position for the better part of the work day and if lifting and/or carrying is limited to small objects with a maximum weight of ten pounds," without "frequent or continuous use of the extremities for controlling purposes." Hearing transcript, April 11, 1989, at 33–34.

The VE went on to state that Stewart's skills could transfer to other light work activities, but no sedentary work activities. The ALJ posed various hypothetical questions to the VE concerning the availability of jobs that Stewart could perform. In response to three hypotheticals, the VE asserted that such jobs did exist in suffi-

---

**3.** 20 C.F.R. § 404.1567 (1986) defines "light work":

> (b) **Light work.** Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*

*Id.* (emphasis added).

**4.** 20 C.F.R. § 404.1567 defines "sedentary work":

> (a) **Sedentary work.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

cient number to permit Stewart to be gainfully employed.

The first hypothetical indicated that Stewart "would have to spend one-half of his time sitting; that he could not walk over five to ten minutes consecutively; [and] that he would have to engage in sitting work in a well-ventilated area." The VE opined that Stewart could engage in certain occupations that "would be both sedentary and clean air." *Id.* at 37.

The second hypothetical indicated that he "would not be able to engage in any type of ambulatory activity or work which required lifting anything greater than approximately five pounds." The ALJ elaborated on this by stating that Stewart "would be available for any type of ambulatory activity or work—would not be available for any type of ambulatory activity or work which required lifting anything greater than approximately five pounds." The VE responded that Stewart could engage in certain "light" occupations [5] and other "sedentary" occupations that would "not require lifting over five pounds." *Id.* at 38. The VE later noted that he classified the former group of occupations as "light" because they involved "being on one's feet." He maintained this assertion despite the fact that the ALJ reiterated that the hypothetical indicated that the person "would not be able to engage in any type of [ ] ambulatory activity or work which required lifting anything greater than approximately five pounds." The VE agreed that these occupations would not involve lifting over five pounds and also indicated that no environmental restrictions were taken into account in the hypothetical. *Id.* at 42–43.

The third hypothetical indicated that he could "walk a maximum from across the room to one block; that he could use his arms and hands only for daily living activities; that he could bend and stoop, but not speedily or repetitively; that he could stand for a maximum of one hour at a time and stand for a maximum of two to three hours during an eight-hour day; that he could sit

for a maximum of one-half hour at a time; that he could lift occasionally a maximum of five to six pounds and could [do] nothing repetitively." The VE stated that the sedentary positions previously mentioned would accommodate the last hypothetical. *Id.* at 39–40.

The ALJ's May 8, 1989 recommended decision indicated that, on the basis of Stewart's vocational factors and his ability to walk five to ten minutes, sit for one-half of an eight-hour day, do only minimal lifting and work in an atmospherically clean, well-ventilated area, Stewart had the capacity to perform both light and sedentary work. Further, the VE had testified to the existence of sufficient jobs in the national economy that Stewart could perform. Thus, the ALJ found Stewart to be not disabled.

## II. DISCUSSION

■ On appellate review of a social security disability case, it is the duty of this court to determine whether the administrative decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) (1988); *Brand v. Secretary of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Our review is more than a mere search of the record for substantial evidence supporting the Secretary's finding. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

This court is required to review the administrative record as a whole and to consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

---

**5.** These occupations included: ticket taker, usher and locker room, rest room and theater attendants.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Cruse v. Bowen,* 867 F.2d 1183, 1184–85 (8th Cir.1989) (quoting *Brand v. Secretary of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir.1980)).

Section 423(d)(1) of the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1) (1988). The Act further provides that "[a]n individual … shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1988).

■ Claimants for disability benefits have the burden of proving that they are disabled as defined by the Social Security Act. Once claimants have established an inability to return to their past relevant work, the burden shifts to the Secretary to go forward with evidence showing the availability of other jobs in the national economy that the claimant could perform. In the case of a solely exertional impairment, the Secretary may meet this burden by reference to the medical-vocational guidelines contained in the Secretary's regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00 (1986); *McCoy v. Schweiker,* 683 F.2d 1138, 1141 (8th Cir.1982) (en banc). However, when the record indicates that the claimant has a nonexertional impairment or an exertional impairment which does not fit within the guidelines, the Secretary must use vocational expert testimony or other similar evidence to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing. 20 C.F.R. § 404.-1569 (1986); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); *Kirksey v. Heckler,* 808 F.2d 690, 692–94 (8th Cir.1987).

■ Having accepted that Stewart could not return to his former occupation, the ALJ called a VE to testify at the administrative hearing to properly account for Stewart's nonexertional impairment (his sensitivity to dust and fumes in the air). The VE noted that none of Stewart's vocational skills would transfer to any job that Stewart could perform.

As set out previously in this opinion, the VE testified to the existence of jobs that Stewart could perform, including "sedentary" jobs and certain "light" jobs, qualified with the restriction that he could lift no more than five pounds. The only hypothetical question, which resulted in a response that Stewart could perform light work, improperly omitted Stewart's environmental limitations and failed to account for his inability to engage in sustained ambulatory effort because it only restricted him from ambulatory activity requiring the lifting of greater than five pounds. This answer does not support a finding that Stewart was capable of performing the full range of light work as defined in the regulations to include lifting up to twenty pounds. 20 C.F.R. § 404.1567(b) (requiring that a claimant have the ability to perform substantially all of the light work activities to be considered capable of performing light work).

Also, neither the medical reports nor Stewart's testimony afford a basis for finding that Stewart could perform light work. The physicians who examined Stewart confirmed the obstructive airway disease diagnosis. They consistently indicated that he could not return to his former occupation. In their opinion, Stewart would never be able to return to any occupation or his ability to perform any other jobs would be

limited to sedentary activities in a clean air environment.

Stewart, throughout the administrative process, has asserted an activity level consistent only with sedentary occupations. Written statements submitted by his wife and sister support Stewart's reported level of impairment.

The ALJ attacked Stewart's credibility on the basis of several "inconsistencies in the record." He indicated that Stewart had denied having a high school education on the Disability Report, but subsequently testified to having a GED. Further, Stewart testified that he had a heart attack, but medical evidence failed to support this contention. Also, Stewart told his doctor that he had quit smoking, but later admitted to smoking occasionally. Recommended Decision, May 8, 1989.

We reject the ALJ's characterization of the record. The Disability Report specifically asks "What is the highest grade of school that you completed?". Here Stewart correctly indicated "8th grade" as the point when he stopped formally attending school and he reiterated this at the hearing. Stewart testified that he had "a slight heart attack. [He] went back to work and the doctor called me and told me to come see him, that I shouldn't be in the plant because my lungs were completely gone causing me more problems than my heart were [sic]." Hearing Transcript, April 11, 1989, at 7. The doctors had initially told Stewart that his heart was causing the chest pain. Also, contradictions in Stewart's reported smoking habits are inconclusive because he has stopped and restarted smoking numerous times in the past. Thus, the ALJ failed to identify any inconsistencies in Stewart's testimony.

Consequently, uncontradicted evidence leads us to the conclusion that Stewart was capable of performing, at best, sedentary work. With this in mind, the medical-vocational guidelines direct a finding that Stewart, a fifty-four-year-old high school graduate with no transferable skills, was "disabled" as of March 31, 1986, the last date of his insured status eligibility for disability benefits.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14.[7] As no useful purpose would be served by once again returning this case to the administrative level, and the record before the ALJ contained substantial evidence supporting a finding that Stewart was disabled, an order granting benefits is appropriate. *See, e.g., Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984); *Baugus v. Secretary of Health & Human Servs.*, 717 F.2d 443, 448 (8th Cir.1983); *Nelson v. Heckler*, 712 F.2d 346, 349 (8th Cir.1983); *Tennant v. Schweiker*, 682 F.2d 707, 710–11 (8th Cir. 1982); *Zimiga v. Schweiker*, 651 F.2d 611, 613 (8th Cir.1981).

## III. CONCLUSION

We reverse and remand to the district court for entry of a judgment awarding Stewart disability benefits, under 42 U.S.C. § 423, as of April 1, 1986.

---

**6.** 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.-00(e)(2) states that:

[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone....

**7.** Table 1 deals with the categorization of individuals as disabled or not disabled, when their maximum sustained work capability is limited to sedentary work. For individuals, like Stewart, who are between the ages of 49 and 55 (closely approaching advanced age), high school graduates, and skilled or semiskilled whose skills are not transferable, the Table directs a finding of disabled.