**Henry HALL, Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security,\* Appellee.**

**No. 95–1141.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1995.

Decided July 24, 1995.

---

\* As of March 31, 1995, the Social Security Administration became an agency independent from the Department of Health and Human Services.

Therefore, the Court has substituted Shirley S. Chater for Donna E. Shalala pursuant to Fed. R.App.P. 43(c).

Nancy Mogab, St. Louis, MO, argued, for appellant.

Joseph Moore, St. Louis, MO, argued (Edward L. Dowd, Jr., U.S. Atty., Edwin B. Brzezinski, Asst. U.S. Atty. of St. Louis, MO and Frank V. Smith, III, Chief Counsel and Sandra L. Walace, Asst. Regional Counsel, Social Sec. Adm. of Kansas City, MO, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Henry Hall appeals from the District Court's order affirming the Secretary of Health and Human Services' decision to deny Hall's application for disability insurance benefits. We remand for further findings.

## I.

Mr. Hall, at the time of the hearing, was forty years old, was five feet ten inches tall, weighed two hundred and ten pounds, and had completed high school. From 1981 through September of 1991, Hall worked at

Brown Shoe Company as a dock worker. His work required him to operate a forklift, load and unload trucks, and regularly lift various items weighing fifty pounds. Before working for Brown Shoe, Hall worked as a feeder checker for a company that made milk cartons. This job involved a lot of standing, twisting, and bending. He has also had a job as a laborer baling and stacking foam. He has nineteen years of manual-labor work experience.

Mr. Hall's back and neck injuries began in 1990, when he was in a car accident. He was treated with traction, physical therapy, and a work-hardening program. After five to six months of this treatment, he was able to return to his job at Brown Shoe. Unfortunately, he re-injured his back unloading and lifting boxes over his head in September of 1991.

Mr. Hall has had two magnetic resonance imaging tests to evaluate the extent of his back injuries. He suffers from spondylosis[1] of his cervical discs at C4–C5, C5–C6, and C6–C7. The tests also showed that his lumbar spine has chronic degenerative disc disease at L4–L5 and L5–S1 with central bulging or possibly herniation of an intervertebral disc. There was also a suggestion of an impingement on the descending L5 root on both sides.

The doctors recommended that he not try to lift anything over 35 pounds. When he told Brown Shoe of that limitation, he was terminated from his job. He has not had a job since then.

Mr. Hall complains of constant pain in the middle of his lower back. When the pain becomes more severe, it radiates to the right side and becomes unbearable. This happens at least twice a week, depending on his level of exertion, or if he twists. This pain also radiates down into his left leg. The left leg then becomes numb and tingling. The lower part of his neck continually hurts and becomes worse if he twists his neck. This pain prohibits him from reading for more than five to ten minutes, and he cannot move his head from side to side without a lot of pain. He says the pain in his neck also goes into his left arm, leaving his arm numb and tingling, and impairing his grip. He is right-handed.

Mr. Hall says the pain keeps him awake throughout the night tossing and turning; he wakes up with a stiff back. He spends his day mostly lying about with his legs elevated by pillows. This is the most comfortable position he has found, and it is better than sitting or standing. Approximately three or four times a day he puts Absorbine, Jr., or Heet on the aches to keep them soaked with heat.

Mr. Hall takes either Tylenol, Advil, or Anacin every two to three hours. Initially, the doctor prescribed motrin for the pain, but he cannot afford to go to the doctor to get the prescription renewed, and the motrin gave him ulcers. Dr. Johnson decided to take Mr. Hall off therapy because his back will not improve.

Even with the pain medication Mr. Hall takes every couple of hours, he says he cannot do any housework or yardwork. He can drive only a couple of blocks to the drugstore. His daughter drove him to the hearing, and during the 100– to 140–mile trip, they had to stop three times to get the stiffness out of his back. The drive took five hours. He can walk a couple of blocks, but the farther he walks the worse the pain becomes, and he does not walk regularly. He cannot sit for longer than 30 minutes without the pain increasing. He thinks he can stand about 40 to 45 minutes on a good day, but he has not tried to stand that long in a while. He does not try to lift anything larger than a two-liter bottle. When he left the doctor in 1991, the doctor gave him a lumbar brace. Even though the brace does not give him relief from the pain, he wears it because the doctor told him it would help keep his spine in place.

The ALJ found Mr. Hall had mild degenerative arthritis of the left knee, cervical spondylosis with left cervical radiculopathies at C5, C6, and C7, and degenerative lumbar disc disease with central disc bulging at L5–S1. In light of these findings, the ALJ found that Mr. Hall could not return to his past

1. The dissolution of a vertebra.

relevant work. Accepting that the burden had shifted to the Secretary, the ALJ stated that Mr. Hall, at forty years of age, was a younger individual who, having completed high school, had the functional capacity to do sedentary work.

The ALJ noted that subjective complaints of pain cannot be disregarded solely because they are not fully corroborated by the medical evidence. He quoted *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted), for the method an adjudicator is supposed to use when evaluating the credibility of an individual's testimony and complaints. The ALJ then stated:

> The claimant visits friends, relatives, and neighbors two to three times per week. He drives an automobile. No physician has restricted the claimant from sedentary work, only that he is unable to engage in manual labor. The evidence indicates that the claimant's discomfort would be precipitated and/or aggravated by physical activity greater than that demanded by sedentary work. The claimant takes only over-the-counter analgesics for discomfort.

The ALJ concluded that although Mr. Hall had a steady work record, the evidence did not reveal impairments which would keep Mr. Hall from performing sedentary work.

Mr. Hall makes two arguments in support of his request that we reverse or remand the District Court's order. First, Mr. Hall argues that the evidence in the record as a whole was not substantial enough to support the ALJ's finding that he could perform sedentary work. Second, he urges us to find the ALJ erred when he applied the medical-vocational guidelines of the social-security regulations, rather than calling a vocational expert to testify, since the case involved a combination of exertional and non-exertional impairments.

## II.

█ When an ALJ reviews a claimant's subjective allegations of pain and determines whether the claimant and his testimony are credible, the ALJ must examine the factors listed in *Polaski* and apply those factors to the individual. Merely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain. *Polaski* requires the factfinder to examine,

> (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) dosage, effectiveness, and side effects of medication, (4) precipitating and aggravating factors, and (5) functional restrictions.

*Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir.1991) (citation omitted). When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony. *Ibid.*

█ The ALJ did not expressly find that Mr. Hall's complaints of pain were not credible. The ALJ did list some of Mr. Hall's activities, but the ALJ did not state how these minor activities showed that Mr. Hall was not suffering or that he could do a full-time competitive job on a continuing and sustained basis. For a claimant to qualify for work at any level, that claimant must have the ability to perform the tasks of employment on a daily basis. See *Harris v. Secretary of Department of Health and Human Services*, 959 F.2d 723, 726 (8th Cir. 1992).

Mr. Hall can visit with friends, but that is not much of an indication of what he could do in the workplace. Mr. Hall can drive, but the ALJ did not mention that his driving is limited to a couple of blocks. Whenever Mr. Hall has to go any great distance, he is driven by someone else. The ALJ also noted that Mr. Hall takes only over-the-counter medication, but he did not mention how often Mr. Hall takes these drugs (every two or three hours), the dosage of the medication, or the side effect that motrin had given him. The ALJ mentioned that prior to his second injury, Mr. Hall had a good work record, but then seemingly dismissed that factor as unimportant. Although the ALJ noted that Mr. Hall was right-handed and the right hand was not impaired, he neglected to consider the fact that Mr. Hall's left hand and arm were injured and become numb with pain.

On this record, we doubt that the Secretary carried her burden of proving that Mr. Hall will be able to work eight hours every day. This man cannot sleep well, he cannot lift more than a two liter bottle, he cannot turn his head side to side, he cannot read for more than 10 minutes at a time, he cannot drive more than a couple of blocks, and he cannot sit for more than 45 minutes without becoming stiff and in pain. The only semi-comfortable position for Mr. Hall is lying on the floor with his legs propped up. These impairments are consistent with the objective findings of degeneration of the spine. Of course, the ALJ was not obliged to believe the claimant, but without an express finding that Mr. Hall's testimony is incredible, with reasons given for the finding, the record does not support the ALJ's finding that Mr. Hall could perform a full range of sedentary work.

### III.

In a case of solely exertional impairments the Secretary may consult the medical-vocational guidelines to meet her burden of proving the availability of jobs in the national economy that the claimant can perform. *Stewart v. Secretary*, 957 F.2d 581, 586 (8th Cir.1992). If, however, the claimant also has a non-exertional impairment, such as pain, "the Secretary must use vocational expert testimony or other similar evidence to meet the burden of showing the existence of jobs in the national economy that the claimant is capable of performing." *Ibid.* (citations omitted); *Cline*, 939 F.2d at 564–65.

In this proceeding the ALJ did not consult a vocational expert because he found that Mr. Hall's discomfort was "largely exertional." This failure would not have been an error if the ALJ had appropriately discredited Mr. Hall's subjective allegations. As shown above, however, the ALJ did not give legally sufficient reasons for dismissing Mr. Hall's non-exertional impairments.

Furthermore, the rules do not allow the ALJ to decide whether to use the medical-vocational guidelines or to call a vocational expert simply because he believes that a greater percentage of the limitations is exertional than non-exertional. When a claimant has both kinds of limitations to any substantial degree, the factfinder must consult an expert. He or she may not simply cite the Guidelines.

The judgment of the District Court is reversed, and the cause remanded with instructions to remand it to the Commissioner for further proceedings consistent with this opinion.