_____

No. 95-2533
_____

Larry L. Reynolds,                          *
                                            *
          Plaintiff-Appellant,              *      Appeal from the United States
                                            *      District Court for the
     v.                                     *      Western District of Missouri.
                                            *
Shirley S. Chater, Commissioner             *
of the Social Security                      *
Administration,                             *
                                            *
          Defendant-Appellee.               *


_____

               Submitted:  January 12, 1996

                Filed:  April 29, 1996
_____

Before LOKEN, REAVLEY,[*] and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.

     Larry Reynolds appeals from a final judgment of the district court[1] affirming the decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB).  Reynolds contends that the Administrative Law Judge (ALJ) improperly discounted his testimony and that of his wife concerning his pain and erroneously relied on the Medical-Vocational Guidelines to support a finding that he is not disabled. We affirm.

---

[*]The HONORABLE THOMAS M. REAVLEY, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

Reynolds filed his present application for DIB on March 9, 1993, alleging a disability onset date of July 31, 1992, which coincides with the date he quit working because his job was eliminated. He claimed that he was disabled due to arteriosclerotic heart disease, along with pain in his arms, chest, and legs. At the time of his application, Reynolds was 58 years of age and possessed a ninth grade education. Reynolds' claim was denied, and a hearing before an ALJ ensued.

Reynolds testified at the hearing that he had been employed by Mid-America Dairy for 26 years, with his last position being as a plant maintenance worker. His responsibilities in that position included lubricating and servicing all of the equipment in the plant. To perform these tasks, Reynolds was required to occasionally lift over 100 pounds and frequently lift and/or carry up to 25 pounds; Reynolds frequently carried buckets of oil weighing 35 pounds to different locations in the plant. He also used a two-wheel dolly to transport oil drums weighing up to 400 pounds. In an eight-hour workday, Reynolds generally stood or walked eight hours.

Reynolds suffered a heart attack in 1984. He stated that when he returned to work his employer provided him with a motorized vehicle so he could ride rather than walk to different buildings. During his last year of employment, Reynolds' employer made other accommodations for him, which included having other employees do the heaviest lifting for him and permitting him to take breaks when the need arose. Reynolds testified that by the end of his employment, he had to take a ten-minute break every hour. Reynolds testified that he quit working on July 31, 1992, due to a shortness of breath, along with discomfort in his legs, arms, and back. In his disability report, however, Reynolds stated that he quit working because his job was cut.

Reynolds' wife also testified. She stated that Reynolds spends a significant amount of time at home resting in their recliner. She also stated that Reynolds complains of pain and has to take pain medication whenever he exerts himself physically or is under stress.

Following the familiar five-step analysis prescribed by the governing regulations, see 20 C.F.R. § 404.1520, the ALJ concluded that Reynolds had not engaged in substantial gainful activity since July 31, 1992, has a severe impairment (a heart disorder) that does not equal a listed impairment, and cannot return to his past relevant work. The ALJ determined, however, that Reynolds' claims of incapacitating pain were inconsistent with the record evidence. In reaching this conclusion, the ALJ relied on: the objective medical evidence, which showed an absolute absence of medical problems since his heart attack in 1984 and Reynolds' treating physician's findings that Reynolds was in fine health; a residual functional capacity assessment completed April 13, 1993, which concluded that Reynolds could lift 50 pounds occasionally and 25 pounds frequently and stand or walk six hours in an eight-hour workday; Reynolds' work history, which showed that Reynolds returned to his physically demanding position as a maintenance worker after his heart attack and continued to work there after the onset of alleged disabling pain; and Reynolds' numerous daily activities. Based on these findings, the ALJ determined that Reynolds possessed the residual functional capacity to perform medium exertional work, which when considered with Reynolds' age, education, and previous work experience, generated a finding under the governing regulations that Reynolds was not disabled. See 20 C.F.R., pt. 404, subpt. P, app. 2, tbl. 3, rule 203.12.

The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. The district court affirmed the final decision of the Commissioner. Reynolds appeals.

We must affirm the district court's judgment if substantial evidence exists to support the ALJ's determinations when the record is viewed as a whole. Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994).

Reynolds contends that the ALJ improperly discounted his testimony concerning pain. Specifically, Reynolds argues that the ALJ gave excessive weight to the fact that he continued working after he began having disabling pain and failed to give adequate consideration to testimony regarding his medical condition and the nature of his work at the time that he quit working. These errors, Reynolds continues, directly led to the ALJ's finding that he was capable of performing medium work, which, as noted above, mandates a determination that he is not disabled; in contrast, if the ALJ had concluded that Reynolds' condition permitted him to perform only light work, the guidelines would have required a finding that he was disabled.

"When an ALJ reviews a claimant's subjective allegations of pain and determines whether the claimant and his testimony are credible, the ALJ must examine the factors listed in Polaski[, 739 F.2d 1320 (8th Cir. 1984)] and apply those factors to the individual." Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). These factors include the claimant's daily activities, the frequency and intensity of the pain, and any functional restrictions. Id. "When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." Id.

In this case, the ALJ canvassed Reynolds' testimony, along with the other record evidence, and expressly determined that

Reynolds' subjective complaints of pain were not credible to the extent alleged. The ALJ observed that Reynolds' physician had concluded that Reynolds' health was good, that a residual functional capacity assessment concluded that Reynolds could lift and/or carry 50 pounds occasionally and 25 pounds frequently, that Reynolds had performed significant physical work in his maintenance job up until he quit working, and that Reynolds engaged in numerous daily activities. Citing Polaski, the ALJ concluded that these activities were simply inconsistent with the type of disabling pain that Reynolds was alleging.

After carefully reviewing the record, we conclude that the ALJ properly applied the criteria set forth in Polaski to discount Reynolds' subjective complaints of pain and adequately set forth the reasons for discrediting Reynolds' testimony. Substantial evidence exists to support the ALJ's conclusion that Reynolds was capable of performing the full range of medium work and accordingly, the Medical-Vocational Guidelines require a conclusion that Reynolds is not disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 203.12.

Reynolds also complains that the ALJ failed to give adequate weight to his wife's testimony and failed to make a specific finding concerning her credibility. "Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." Carlson v. Chater, 95-3169, 1996 WL 23231 (8th Cir. Jan. 24, 1996) (quotations omitted). In this case, the ALJ did not specifically outline his reasons for rejecting Mrs. Reynolds' testimony, but it is clear from the record that the ALJ made certain implicit determinations regarding her credibility. Although we again reiterate that it is preferable to have explicit, specific findings concerning the credibility of each witness, any

-5-

deficiency in this case does not require reversal because the ALJ's conclusion is supported by substantial evidence.

Finally, Reynolds contends that the ALJ erred at step five of the sequential process by relying on the Medical-Vocational Guidelines to assess his capability for performing work that is available in the national economy. Reynolds claims that because he has nonexertional impairments and was unable to perform his past relevant work, the ALJ was required to have a vocational expert provide testimony on the availability of jobs he could perform, rather than resorting to the guidelines.

Generally, when a claimant has a nonexertional impairment, such as pain, the ALJ must obtain testimony from a vocational expert in order to satisfy the Commissioner's burden at step five of the sequential process. Hall, 62 F.3d at 224. Where, however, the ALJ properly discredits the claimant's complaint of a nonexertional impairment, the ALJ is not required to consult with a vocational expert and may properly rely on the vocational guidelines at step five. Id.; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994).

As outlined above, the ALJ sufficiently discredited Reynolds' complaints of pain. "When a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden [at the fifth step] may be met by use of the [Medical-Vocational Guidelines]." Naber, 22 F.3d at 189-90. (quotations omitted) (alterations in original). Thus, the ALJ committed no error by using the Medical-Vocational guidelines to determine whether Reynolds was disabled.

Accordingly, we affirm the judgment of the district court.

-6-

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.