_____

No. 95-2639
_____

Junior Ray Shelton,                    *
                                       *
       Plaintiff - Appellant,          *    Appeal from the United States
                                       *    District Court for the
       v.                              *    Western District of Missouri.
                                       *
Shirley S. Chater, Commissioner        *
of the Social Security                 *
Administration,                        *
                                       *
       Defendant - Appellee.           *


_____

Submitted:  January 12, 1996

Filed:  July 1, 1996
_____

Before LOKEN, REAVLEY,[*] and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.

       Junior Ray Shelton appeals from the district court's[1] order affirming
the decision of the Commissioner of Social Security to deny disability
insurance benefits (DIB) and supplemental security income benefits (SSI).
Shelton challenges an administrative law judge's (ALJ) determination that
although Shelton could not return to his past work, he did not qualify for
benefits because he was capable of performing work that exists in
significant numbers in the national economy.  We affirm.

_____

       [*]The Honorable Thomas M. Reavley, United States Circuit
Judge for the Fifth Circuit, sitting by designation.

       [1]The Honorable Joseph E. Stevens, Jr., United States
District Judge for the Western District of Missouri.

In July 1992, Shelton filed applications seeking DIB under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and SSI based on disability under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Shelton alleged the onset of disability as of June 15, 1992, based on heart problems and pain in his hip, back, and shoulder. Shelton had suffered a heart attack on June 27, 1992, after which he underwent coronary angioplasty. At Shelton's follow-up appointment, his doctor had determined Shelton had "a very good prognosis, as far as his heart condition [wa]s concerned." (J.A. at 170.) The doctor had also noted that Shelton had suffered recurring pains in his left shoulder, hip, and lower back for the past twenty years, and that anti-inflammatory medications had not been very helpful. In addition, Shelton had suffered from polio as a child but had recovered without any permanent paralysis. From 1988 until the onset of his alleged disability, Shelton had worked as a self-employed carpenter, bidding jobs and performing general carpentry. Shelton's applications for benefits were denied initially and on reconsideration. Shelton sought a hearing before an ALJ, which was held on November 2, 1993.

Shelton was treated between July 1992 and November 1993 for a number of ailments, including throat discomfort, a small hiatal hernia, digestive problems, pain in the lower abdomen, back and hip pain, and nausea. On February 2, 1993, Shelton's cardiac doctor stated that Shelton's activities need not be restricted from a cardiovascular perspective. His chiropractor stated that, due to back pain, Shelton would be unable to return to work; however, Shelton's orthopedic doctor concluded on February 18, 1993, that Shelton could resume normal activities and recommended conservative treatment. The orthopedist stated that Shelton could occasionally lift or carry 50 pounds, frequently lift or carry 20 pounds, and

sit for 4 hours per day and stand for 4 hours per day in full-time employment.

At the hearing, Shelton testified as follows: He is not able to perform as his orthopedist had stated; he cannot sit for an hour, can stand at most for about 30 minutes, can lift at most about 20 pounds, and can lift only 5 pounds on a frequent basis. He lies down two to three times daily and sometimes uses heat to ease the pain. He does not do yard work or housework, but he does sometimes accompany his wife to do the shopping. Shelton is able to drive "to a certain extent." He watches television, but his other recreational activities have been limited or eliminated by his impairments. Shelton's wife also testified about his discomfort, stating that he frequently changes positions, most of the time lying down or sitting. A friend of the family testified accordingly.

The ALJ also heard testimony concerning Shelton's education and literacy. Shelton stated he had obtained an eighth grade diploma, but he had missed quite a few days of school in order to work for his father. Shelton testified that he can write, although he has some problems with spelling. He also stated he can read "to a certain extent," unless the writing is "too complicated." (J.A. at 41.) Shelton's wife indicated he can read and understand instructions on how to assemble something he might have bought at the store.

Applying the five-step sequential analysis for evaluating disability claims, see 20 C.F.R. § 404.1520(b)-(f), the ALJ found first that Shelton was not currently working and next that Shelton had a severe impairment of coronary artery disease, status post-myocardial infarction with stable angina, a small hiatal hernia, gastritis and duodenitis, and post-polio syndrome with low back and left leg discomfort. The ALJ then determined that Shelton's impairments, individually or in combination, were not listed or

3

medically equal to any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Fourth, the ALJ concluded that Shelton's impairments would preclude him from performing his former work. Upon that conclusion, the burden shifted to the Commissioner to demonstrate that Shelton possessed the residual functional capacity to perform jobs existing in significant numbers in the national economy.

Based on the medical evidence and the testimony presented, the ALJ posed hypothetical questions to a vocational expert (VE). The first question assumed a hypothetical person of Shelton's age, with eight years of education and with Shelton's vocational experience. The hypothetical person could frequently lift approximately 10 pounds, and occasionally lift 20 pounds. The person would need to change positions due to discomfort or pain after either sitting for less than an hour or standing for less than 30 minutes. The person could sit and stand each for a total of about four hours a day. Based on these facts, the VE opined that the person could not perform the work Shelton had previously performed but was capable of several light, unskilled jobs, which the VE identified at the hearing. The VE stated that if the person was functionally illiterate and could not read at all, however, he would not be capable of performing the jobs. In addition, if the person was required to lie down due to pain and discomfort two to three times daily for periods of 30 minutes or more, the VE stated that the person would not be able to return to work.

Based on the VE's response to the first hypothetical question, the ALJ found that Shelton was capable of returning to work and therefore was not disabled as defined by the Social Security Act. The Appeals Council denied review initially and again after receiving additional evidence from Shelton. As such, the ALJ's decision stands as the final decision of the Commissioner. On appeal, the district court affirmed the Commissioner's decision. Shelton now appeals to this court.

4

We must affirm the Commissioner's decision if substantial evidence exists to support the ALJ's determinations when the record is viewed as a whole. 42 U.S.C. § 405(g); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). "We do not reweigh the evidence or review the factual record de novo." Naber v. Shalala, 22 F.2d 186, 188 (8th Cir. 1994). If the record evidence could support two inconsistent positions and one of them represents the Commissioner's findings, we must affirm the Commissioner's denial of benefits. Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).

Shelton contends that the ALJ erroneously concluded Shelton was literate and, relatedly, failed to adequately develop the record on this issue. We disagree. The record indicates that the ALJ questioned both Shelton and Shelton's wife on this issue. Their testimony reveals that Shelton had completed the eighth grade and can read and write. Shelton had most recently worked as a self-employed carpenter (which is considered to be skilled labor), bidding jobs and performing general carpentry work. Considering this evidence, we believe the record as a whole supports the ALJ's finding that Shelton is literate with a limited education. See 20 C.F.R. § 404.1564(b)(3) ("Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. . . . [A] 7th grade through the 11th grade level of formal education is [generally considered to be] a limited education.").

Shelton also argues that the ALJ failed to use the proper standard for reviewing subjective complaints of pain. In particular, Shelton argues the ALJ failed to account for his pain,

which suggests impairment beyond that demonstrated by the objective medical evidence.  See Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984). "When an ALJ reviews a claimant's subjective allegations of pain and determines whether the claimant and his testimony are credible, the ALJ must examine the factors listed in Polaski and apply those factors to the individual."  Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  The Polaski factors include:

> "(1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) dosage, effectiveness, and side effects of medication, (4) precipitating and aggravating factors, and (5) functional restrictions."

Id. (quoting Clive v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991)).  "When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony."  Id.

The ALJ in this case made an express credibility finding under Polaski and stated his reasons for that finding.  The ALJ found that the evidence supports Shelton's statements concerning his pain as a general matter, but not to the severity and degree of which Shelton complains.  The ALJ determined that the objective evidence in the medical reports does not support the degree of pain of which Shelton complains.  Furthermore, the opinions of Shelton's treating physicians did not support Shelton's allegations of pain to a high degree.  Shelton's cardiologist recommended no restrictions on activities or work.  Shelton's orthopedist recommended conservative treatment and had not prescribed significant amounts of medication for pain.  Shelton's gastric problems appeared to be controlled with medication.  The ALJ also noted Shelton "retains the capacity to attend church twice every week, drive as needed, shop as needed,

6

visit with others, and enjoy television and reading."[2] (J.A. at 24.) In addition, the ALJ noted that Shelton does not use a supportive device; nor does he complain of any adverse side effects from his medication. Based on the Polaski factors, the ALJ found that Shelton had overstated the extent of his pain. The ALJ concluded that Shelton's limited activities were the result of lifestyle choices, not medically necessitated limitations. After careful review of the record as a whole, we find that substantial evidence supports the ALJ's ultimate determination regarding Shelton's credibility.

Finally, Shelton challenges the brevity of the district court's one-page order, essentially arguing that the court failed to adequately review the Commissioner's decision and to consider Shelton's contentions. The district court set out the correct legal standards, noting the entire record must be reviewed. "After reviewing the briefs, the ALJ's decision, and the hearing transcript," the court found the record contained substantial evidence supporting the ALJ's decision. (Appellant's Adden. at A2.) We operate under a presumption that the district court conducted a proper review before rendering a decision. Cf. United States v. Hamell, 931 F.2d 466, 468 (8th Cir. 1991) (presuming the district court conducted de novo review before adopting a magistrate judge's report and recommendation). Nothing in this record gives us any reason to abandon this presumption and to

---

[2]Shelton takes issue with this list of activities. While we agree with him that the evidence does not support a finding that he actually engages in all of these activities (e.g., reading for enjoyment), the record does support a finding that he is capable of participating in these activities. He can read; he watches television; he drives and shops to some extent and attends church twice each Sunday. We note that although Shelton cannot sit through an entire one-hour church service, the ALJ included this limitation in the relevant hypothetical question and thus incorporated it into the ultimate decision. We therefore cannot agree that the ALJ's decision is based on erroneous facts.

assume the district judge failed to do what he explicitly stated he had done.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8