Christine ANDERSON, SS# 429–17–2453, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner, Social Security Administration, Defendant.

No. J–C–96–172.

United States District Court, E.D. Arkansas, Jonesboro Division.

Feb. 4, 1998.

---

**1.** Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997, replacing John J. Callahan, Acting Commissioner. He has therefore been substituted as the defendant in this case pursuant to Fed.R.Civ.P. 25(d)(1).

Anthony W. Bartels, Bartels Law Firm, Jonesboro, AR, for Plaintiff.

Stacey Elise McCord, U.S. Attorney's Office, E.D. Arkansas, Little Rock, AR, for Defendant.

## MEMORANDUM AND ORDER

CAVANEAU, United States Magistrate Judge.

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income and Disability Insurance benefits. Plaintiff states she is seeking benefits due to high blood pressure, diabetes, and a nervous condition. (Tr. 67) The Ad-

ministrative Law Judge[2] (ALJ) concluded that plaintiff had not been under a disability within the meaning of the Social Security Act because plaintiff's alleged impairments did not prevent her from performing some of her past relevant work. (Tr. 20) The Appeals Council received and considered additional evidence and then denied plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–5)

Plaintiff filed her timely complaint in this Court. Both parties have moved for summary judgment and submitted briefs in support of their respective positions.

This review function is extremely limited. The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir.1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective summary judgment motions and are not in serious dispute. Therefore, they will not be repeated in this opinion except as necessary.

After careful consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 35 at the time of the hearing. (Tr. 48) Plaintiff testified that she went as far as the eighth grade in school. *Id.* She has previously worked as a maid, cafeteria worker, factory worker, and farm laborer. (Tr. 106–111)

The ALJ considered plaintiff's impairments by way of the required five-step sequential evaluation process. 20 C.F.R. § 404.1520. First, he found that plaintiff had not engaged in substantial gainful activity since filing her application. (Tr. 19)

Second, the ALJ found that, based solely on the medical evidence, with her mild mental retardation, plaintiff had a "severe" impairment within the meaning of the Social Security Regulations. (Tr. 13)

The third step involved a determination, again based solely on the medical evidence, of whether plaintiff's severe impairment met or equaled a listed impairment which is presumed to be disabling. The ALJ determined plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. (Tr. 13–14)

At the fourth step, the ALJ was required to determine whether plaintiff had sufficient residual functional capacity, despite her impairment, to perform her past work. The ALJ established that plaintiff retained the residual functional capacity to perform work-related activities except for work involving reading detailed or complex job instructions or high levels of judgment. (Tr. 19)

He determined plaintiff's past relevant work as a maid and cafeteria worker did not require the performance of work related activities precluded by her limitations. (Tr. 20) The ALJ completed his analysis at step four by concluding plaintiff could perform her past relevant work and, therefore, was not disabled. *Id.*

In support of her motion for summary judgment, plaintiff argues that the ALJ incorrectly determined she did not meet the criteria for Listing 12.05C. (Pl.'s Br. 11–16) The ALJ acknowledged plaintiff's IQ scores demonstrated mild mental retardation. However, he discounted plaintiff's allegations

2. The Honorable Henry Ginger.

that her mental limitations precluded her from working. (Tr. 13, 14–18)

The Court has reviewed the medical evidence and the completed Psychiatric Review Technique Form[3]. (Tr. 21–26) Plaintiff's argument is without merit.

 A claimant has the burden of proving her condition meets or equals an impairment listed in Appendix 1. 20 C.F.R. §§ 416.925(d) and 404.1525(d) (1997); *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995); *see Marciniak v. Shalala,* 49 F.3d 1350 (8th Cir. 1995). The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination. *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990). For a claimant to show that her impairment matches a listing, it must meet all of the specified medical criteria. *Marciniak,* 49 F.3d at 1353. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.*

A claimant is disabled under Listing 12.05C if she establishes the following:

12.05 *Mental Retardation and Autism:* Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). (Note: The scores specified below refer to those obtained on the WAIS, and are used only for reference purposes. Scores obtained on other standardized and individually administered tests are acceptable, but the numerical values obtained must indicate a similar level of intellectual functioning.) . . . .

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing addi-

tional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 (1995).

Mary Ellen Ziolko, Ph.D., administered the Wechsler Adult Intelligence Scale–Revised (WAIS–R); plaintiff's scores were verbal IQ of 72, performance IQ of 68, and a full-scale IQ of 69. (Tr. 208) Dr. Ziolko concluded that plaintiff's responses on the WAIS–R resulted in a full scale IQ which falls within the "mild" mental retardation range. *Id.*

Although plaintiff's IQ scores are within the listed range, there is a split of authority as to whether a valid IQ score of 60 to 70 *automatically* satisfies the first prong of 12.05C. *Compare Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992)(IQ score not conclusive where inconsistent with other evidence of activities and behavior), *citing Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir. 1986)(IQ inconsistent with college record and work as algebra teacher, statistical clerk and administrative clerk) *and Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991)(claimant had trouble seeing and work experience belies retardation) *with Brown v. Secretary of Health and Human Services,* 948 F.2d 268, 270 (6th Cir.1991)(claimant's profile squarely fit DSM–III–R profile of mildly mentally retarded; Secretary could have administered second IQ test if certain of invalidity of score) *and Nieves v. Secretary of Health and Human Services,* 775 F.2d 12, 14 (1st Cir. 1985) and cases cited therein (courts do not inquire further once claimant's IQ found below 70[4]).

In an early case, the Eighth Circuit found the first prong of 12.05C was satisfied by the IQ score: "The ALJ should have considered whether Smith's physical or other mental impairments posed such additional limitation, which would have led to an automatic finding of disability." *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984).

---

3. In addition to the five-step sequential evaluation process noted above, there is a sequential process for evaluation of mental impairments set out in 20 C.F.R. § 404.1520a. The steps of this process are documented by the completion of a standard form, the Psychiatric Review Technique Form. 20 C.F.R. § 404.1520a(d).

4. The upper limit of 12.05C was modified from 69 to 70 in 1991 to be consistent with *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. rev.1987) (DSM–III–R). 56 F.R. 33133. Significant other changes were made in 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00.

A more recent case had a different result. In *Mackey v. Shalala*, 47 F.3d 951 (8th Cir. 1995), the evidence before the ALJ contained an estimate of plaintiff's IQ at 70 to 74. A subsequent WAIS–R test showed a full scale IQ of 65. The Court rejected that evidence, noting that nothing in plaintiff's work history, educational background or anything else in the medical evidence supported an IQ so low as to reflect mild mental retardation. *Id.* 953.

The latest edition of *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) (DSM–IV) notes the danger of relying on IQ scores alone:

Significantly subaverage intellectual functioning is defined as an IQ of *about* 70 or below (approximately 2 standard deviations below the mean). *It should be noted that there is a measurement error of approximately 5 points in assessing IQ,* although this may vary from instrument to instrument (e.g., a Wechsler IQ of 70 in considered to represent a range of 65–75). Thus, it is possible to diagnose Mental Retardation in individuals with IQ between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning. The choice of testing instruments and interpretation or results should take into account factors that may limit test performance (e.g., the individual's sociocultural background, native language, and associated communicative, motor, and sensory handicaps.) When there is significant scatter in the subtest scores, the profile of strengths and weaknesses, rather than the mathematically derived full-scale IQ, will more accurately reflect the person's learning abilities. When there is a marked discrepancy across verbal and performance scores, averaging to obtain a full-scale IQ can be misleading.

at 39–40 (emphasis added).

These significant changes are reflected in the regulations. When *Smith v. Heckler* was decided, the regulation stated, "The degree of impairment should be determined primarily on the basis of intelligence level and the medical report." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B4 (1982). By way of contrast, the current regulation de-emphasizes pure IQ test scores and looks at the bigger picture:

Documentation: The presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and clinics. Adequate descriptions of functional limitations must be obtained from these or other sources which may include programs and facilities where the individual has been observed over a considerable period of time.

Information from both medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased mental demands (stress).

. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00D (1997).

In the 14 years since *Smith v. Heckler* was decided, the regulations have moved away from an automatic decision based on IQ scores alone. Here, the ALJ properly followed the current regulations by taking into account plaintiff's functional abilities and not simply relying on plaintiff's test results.

In determining plaintiff's functional abilities, the ALJ noted that plaintiff engaged in "relatively normal routine activities of daily living." (Tr. 18) He recognized plaintiff was largely responsible for all household functioning for a family of nine, including laundry, cleaning, cooking, and shopping for groceries. *Id.* He further noted that plaintiff attended church, took her children to school, and was able to take care of her personal needs. *Id.*

The ALJ properly focused on plaintiff's ability to function rather than on a diagnosis or IQ scores. Therefore, the ALJ could correctly conclude that plaintiff did not meet listing 12.05C.

Furthermore, plaintiff has not met the second prong of 12.05C, by showing she has an *additional* physical or mental impairment that has a "more than slight or minimal" effect on her ability to perform work. *Cook v. Bowen*, 797 F.2d 687, 690 (8th Cir.1986); *Sird v. Chater*, 105 F.3d 401 (8th Cir.1997).

■ Plaintiff argues that her diabetes, hypertension, and panic disorder satisfy the second prong of 12.05C. However, the ALJ correctly determined plaintiff's diabetes, hypertension, and panic disorder were not "severe" and did not limit her from performing work-related activities.

Plaintiff was only prescribed medication to control her hypertension. (Tr. 147–148, 235–238) The need for no more than conservative treatment is inconsistent with allegations of a disabling condition. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir.1993); *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir.1992).

■ Moreover, plaintiff's treating physician reported plaintiff's response to medication was "good." (Tr. 238) Upon taking her medication as prescribed, her hypertension was "in good control." (Tr. 235) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993).

During two consultative examinations, plaintiff was diagnosed on Axis I with panic disorder but was not prescribed any medications nor referred for any follow up treatment. (Tr. 201, 213) During the history of her illness, plaintiff had only temporarily been prescribed "valium" but was never referred to a specialist nor counselor for specific treatment of her panic disorder. (Tr. 209) A lack of ongoing treatment is inconsistent with complaints of a disabling condition. *Walker v. Shalala*, 993 F.2d 630, 631–32 (8th Cir.1993).

Additionally, plaintiff testified she no longer had diabetes. (Tr. 50)

Plaintiff has the burden of proving that her impairment is "severe." *See Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir.1996). Plaintiff did not meet that burden.

■ Plaintiff also argues that the ALJ erroneously discounted her subjective complaints. (Pl.'s Br. 16–18) The ALJ evaluated plaintiff's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). (Tr. 14–17)

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

Given the lack of medical evidence in support of plaintiff's allegations, the lack of medications prescribed, the lack of ongoing treatment, the lack of restrictions placed on plaintiff by her physicians, and her functional capabilities, the ALJ could correctly discount the plaintiff's subjective complaints. *See Thomas v. Sullivan*, 928 F.2d 255, 259–60 (8th Cir.1991); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir.1989).

The ALJ's credibility analysis was proper. He made express credibility findings and gave his reasons for discrediting plaintiff's subjective complaints. *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir.1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th

Cir.1995). This Court should not disturb the decision of any ALJ who seriously considers, but for good reasons, explicitly discredits a claimant's testimony. *See Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir.1993).

Plaintiff has advanced other arguments which the Court has carefully considered and found to be without merit.

The record contains ample support in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson,* 402 U.S. at 401; *see also, Robertson v. Sullivan,* 925 F.2d 1124, 1126–27 (8th Cir. 1991).

THEREFORE, the Court hereby grants the defendant's motion for summary judgment (docket entry number 12), denies plaintiff's motion for summary judgment (docket entry number 9), and dismisses plaintiff's complaint with prejudice.

IT IS SO ORDERED: