_____

No. 95-2158
_____

Ronald Eugene Henry,                  *
                                      *
          Appellee,                   *  Appeal from the United States
                                      *   District Court for the
    v.                                *  Eastern District of Arkansas.
                                      *
United States Department              *
of the Navy, Secretary of             *
the Navy, and Board for               *
Correction of Naval Records,          *
                                      *
          Appellants.                 *

_____

Submitted: January 12, 1996

Filed: March 1, 1996
_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,[*]
       District Judge.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Board for Correction of Naval Records (BCNR) refused to upgrade
Ronald Henry's undesirable discharge from the Marine Corps.  The district
court reversed the BCNR, finding that its decision was arbitrary,
capricious, and not supported by substantial evidence.  Henry v. Department
of the Navy, 886 F. Supp. 686 (E.D. Ark. 1995).  We conclude that BCNR's
decision was neither arbitrary nor capricious and that it was in fact
supported by substantial evidence.  We therefore reverse the judgment of
the district court.

_____

[*]The HONORABLE JOHN B. JONES, United States District
Judge for the District of South Dakota, sitting by
designation.

The BCNR may recommend that the Secretary of the Navy correct its records when the BCNR considers such action necessary to correct an error or remove an injustice. See 10 U.S.C. § 1552(a); 32 C.F.R. § 723.2(b). Accordingly, it may deny an application to correct such records if it determines that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice. 32 C.F.R. § 723.3(e)(2). The BCNR reviewed the evidence in Mr. Henry's case in painstaking detail and concluded that it was "insufficient to establish the existence of probable material error or injustice."

The Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., narrowly confines the scope of our review of this appeal. We review the district court's decision de novo, applying the same standard as the district court, and making our own independent review of the agency's decision. Shalala v. St. Paul-Ramsey Medical Center, 50 F.3d 522, 527 (8th Cir. 1995); Good Samaritan Hospital v. Sullivan, 952 F.2d 1017, 1023 (8th Cir. 1991), cert. denied, 506 U.S. 914 (1992). In reviewing a correction board matter, the reviewing court must determine whether the board's decision was arbitrary, capricious, or not based on substantial evidence. Chappell v. Wallace, 462 U.S. 296, 303 (1983); Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1011 (8th Cir. 1989); see 5 U.S.C. § 706(2)(A) & (E). The arbitrary and capricious standard is a narrow one that reflects the deference given to agencies' expertise within their respective fields. As long as the agency provides a rational explanation for its decision, a reviewing court cannot disturb it. Nat'l Wildlife Federation v. Whistler, 27 F.3d 1341, 1344 (8th Cir. 1994). Review of a military agency's ruling, moreover, must be extremely deferential because of the confluence of the narrow scope of review under the APA and the military setting. Falk v. Secretary of the Army, 870 F.2d 941, 945 (2d Cir. 1989). Our review of a military correction board's decision is limited to deciding "whether the Board's decisionmaking process was deficient, not whether the decision was correct." Watson, 886 F.2d

at 1011 n. 16.  In appraising the agency's factfinding, we note that substantial evidence is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions does not indicate that substantial evidence fails to support an agency's findings.  See, e.g., Baker v. Secretary of Health and Human Services, 955 F.2d 552, 554 (8th Cir. 1992).

We summarize in this paragraph the BCNR's findings regarding Mr. Henry's service record and the facts surrounding his discharge.  Mr. Henry enlisted in the Marine Corps in July, 1968.  Shortly after completing his basic training, he was punished for an unauthorized absence and violating a lawful order.  He was assigned to Vietnam in April, 1969.  In August of that year, he hit a corporal in the head with a bicycle chain, for which he was reduced in rank and fined.  In September, 1969, he went on two more unauthorized absences.  Upon his return, he was referred for psychiatric examination, and his evaluator concluded that he was accountable for his actions and that a psychiatric discharge was not warranted.  The next day, he hit a corporal in the face with a rifle butt and broke his nose.  A special court-martial was convened to consider assault charges against Mr. Henry and two attorneys were appointed to defend him.  Mr. Henry's lead attorney, Captain William Iorio, informed him of the pending charges. (Capt. Iorio testified that Mr. Henry was preoccupied with being discharged from the Marine Corps and repeatedly raised the possibility of seeking an administrative discharge in lieu of a court-martial.)  Capt. Iorio conducted an investigation into Mr. Henry's case, which Capt. Iorio ultimately concluded was unlikely to have a favorable outcome.  Mr. Henry persisted in proposing a discharge and Capt. Iorio agreed that a discharge would be a reasonable course of action.  Capt. Iorio explained the likely adverse consequences of such a discharge and advised Mr. Henry of his rights.  The attorneys prepared a document entitled Request for an Undesirable Discharge for the Good of the Service to Escape Court-Martial, which stated that Mr. Henry had received advice of

counsel (with which he was satisfied), that his counsel had specifically informed him of his rights, and that he waived those rights. Mr. Henry read and signed the document, and the Marine Corps approved the request. In November, 1969, he was discharged from the service.

The BCNR recognized that Mr. Henry and Capt. Iorio differed on the issue of whether Mr. Henry received adequate legal representation. Mr. Henry maintained that his lawyers and his commanding officer "badgered" him until he succumbed to their coercion, despite his wish to stand trial. The BCNR, however, specifically credited Capt. Iorio's contrary testimony in light of his distinguished military legal career and because failing to represent Mr. Henry aggressively within the bounds of the law would have subjected both of Mr. Henry's attorneys to disciplinary action by the Marine Corps and their respective bar associations. The BCNR concluded that Mr. Henry's attorneys represented him properly and that the circumstances surrounding his request for discharge did not violate his right to due process of law.

The BCNR also considered whether an undesirable discharge was an equitable and appropriate characterization of Mr. Henry's service. Mr. Henry alleged that he had been a victim of racial discrimination in the Marine Corps in Vietnam. Although the BCNR concluded that service in Vietnam may have been somewhat more difficult for Mr. Henry and other blacks, it noted that Capt. Iorio testified that his investigation disclosed that race played no part, or a negligible part, in Mr. Henry's offenses. According to the BCNR, other equitable considerations supported mitigation in this case, including Mr. Henry's somewhat limited intelligence as reflected in his test scores, his minor psychological and emotional problems, his youth, and his immaturity. The BCNR was more impressed, however, by the fact that during Mr. Henry's short tenure in the military he committed numerous offenses including two violent assaults on superiors. The seriousness of the two assaults

and two of the unauthorized absences was compounded because they occurred in a war zone.  The BCNR concluded that Capt. Iorio correctly advised Mr. Henry that it would be appropriate for him to request discharge for the good of the service rather than face trial by court-martial; it believed that the court-martial panel surely would have found Mr. Henry guilty and would have punished him with a bad conduct discharge.  The request for discharge also enabled Mr. Henry, in the BCNR's opinion, to escape the likelihood of a substantial period of confinement.  The BCNR concluded that the same considerations "now militate against any favorable action by this Board on equity or clemency grounds."

We have reviewed the administrative record and conclude that the BCNR's decision was not arbitrary, capricious, or unsupported in the evidence.  All of the BCNR's findings of fact are more than amply supported in the record and we detect no legal error in the proceedings.  We find that the BCNR's decisionmaking process does not appear to have been deficient, see Watson, 886 F.2d at 1011 n. 16, and we must therefore affirm its decision.

For the foregoing reasons, we reverse the judgment of the district court.

A true copy.

        Attest:


            CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-