O’SCANNLAIN, Circuit Judge,
concurring specially:
I fully concur in the court’s opinion. The repeal of Don’t Ask, Don’t Tell has *1169 mooted this case, and our opinion properly vacates the district court’s judgment, injunction, rulings, and findings.
I write separately because our inability to reach the merits may leave uncertainty about the role Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), may have in substantive due process challenges. Although Congress spared us the need to reach the merits in this case, other such challenges will come to the courts. Because “guideposts for responsible decisionmaking” on matters of substantive due process are “scarce and open ended,” Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), I think it useful to explain how courts should approach the application of Lawrence in appropriate cases.
I
The Supreme Court has emphasized its “reluetan[ce] to expand the concept of substantive due process.” Collins, 503 U.S. at 125, 112 S.Ct. 1061. To confíne that concept to its proper bounds, the Court has developed an “established method” of substantive due process analysis that comprises two primary features. Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).
First, the Court requires “a ‘careful description’ of the asserted fundamental liberty interest.” Glucksberg, 521 U.S. at 721, 117 S.Ct. 2258; see Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); Collins, 503 U.S. at 125, 112 S.Ct. 1061. In crafting such descriptions, the Court has eschewed breadth and generality in favor of narrowness, delicacy, and precision.
In Washington v. Glucksberg, for example, the Court framed the issue before it as “whether the ‘liberty’ specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so.” 521 U.S. at 723, 117 S.Ct. 2258. The Court rejected capacious formulations of the asserted right, such as “the right to choose a humane, dignified death” or “the liberty to shape death.” Id. at 722, 117 S.Ct. 2258 (internal quotation marks omitted). Similarly, in Cruzan v. Director, Missouri Department of Health, the Court formulated the interest at stake as a “right to refuse lifesaving hydration and nutrition,” 497 U.S. 261, 279, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), rather than as a “right to die.” So too in Reno v. Flores, where the Court described the interest at issue as “the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution.” 507 U.S. at 302, 113 S.Ct. 1439. Again, the Court rejected more general articulations of the alleged right, such as “the ‘freedom from physical restraint’ ” and “the right to come and go at will.” Id.
Second, the Court examines whether that carefully described right is “deeply rooted” in our Nation’s history, legal traditions, and practices or in supporting case law. Glucksberg, 521 U.S. at 721, 117 S.Ct. 2258 (internal quotation marks omitted); see Collins, 503 U.S. at 126-29, 112 S.Ct. 1061 (examining “the text [and] history of the Due Process Clause”); Cruzan, 497 U.S. at 269-77,110 S.Ct. 2841 (examining the common law and contemporary case law); see also Flores, 507 U.S. at 303, 113 S.Ct. 1439 (observing that no court had ever held that there was a constitutional right of the sort alleged). In Glucksberg, for example, the Court examined those sources for evidence of “a right to commit suicide with another’s assistance.” 521 U.S. at 724, 117 S.Ct. 2258; see id. at 710-19, 723-28, 117 S.Ct. 2258. *1170 Coming up empty-handed, the Court concluded that this “asserted ‘right’ ... is not a fundamental liberty interest protected by the Due Process Clause.” Id. at 728, 117 S.Ct. 2258.
The Court has imposed these dual limitations on substantive due process analysis to preserve the judiciary’s proper role in the constitutional structure. “[Extending constitutional protection to an asserted right or liberty interest ... to a great extent[] placets] the matter outside the arena of public debate and legislative action.” Glucksberg, 521 U.S. at 720, 117 S.Ct. 2258. Whenever the Court expands the concept of substantive due process, moreover, it risks “subtly transforming]” the liberty protected by the due process clause to “the policy preferences of the Members of th[e] Court.” Id.
In short, when confronted with assertions of new fundamental rights, rather than invite innovation the Court has counseled caution. The Court has developed a trusted method reflecting that caution. And while the Court has on occasion departed from its established method, it has not licensed lower courts to do so. See Witt v. Dep’t of Air Force, 548 F.3d 1264, 1273 (9th Cir.2008) (O’Scannlain, J., dissenting from denial of rehearing en banc). Most important, when a right is not rooted in our constitutional text, traditions, or history, our authority as judges is at its end. We must then leave the task of identifying and protecting new rights where the Constitution leaves it — with the political branches and the people. See Glucksberg, 521 U.S. at 720, 117 S.Ct. 2258.
II
A
Against this established legal background, the district court in this case reasoned as follows: Fundamental rights trigger heightened judicial scrutiny. Log Cabin Republicans v. United States, 716 F.Supp.2d 884, 911 (C.D.Cal.2010). Lawrence v. Texas “recogniz[ed] the fundamental right to ‘an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct.’ ” Id. (quoting 539 U.S. at 562, 123 S.Ct. 2472). Log Cabin’s challenge to Don’t Ask, Don’t Tell implicates that same fundamental right. Id. Therefore, Don’t Ask, Don’t Tell must withstand heightened scrutiny. Id.
This is not the “established method” of substantive due process analysis. Indeed, this analysis was tantamount to a conclusion that the Supreme Court in Lawrence rejected its own settled approach and established a sweeping fundamental right triggering heightened scrutiny regardless of context. On that unsupported foundation, the district court subjected 10 U.S.C. § 654 to heightened scrutiny.
The Supreme Court’s cases instruct that departures from the constitutional text must be narrow, carefully considered, and grounded in the Nation’s history, traditions, or practices. See supra Part I. The district court’s decision followed none of those instructions. Departing from settled practice was particularly improper in this case, which involved a facial constitutional challenge to a federal statute. Judging the constitutionality of an Act of Congress is “the gravest and most delicate duty” that federal courts are called upon to perform. Rostker v. Goldberg, 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (internal quotation marks omitted). Proper respect for Supreme Court precedents, for a considered congressional policy, and for the traditions and history of our country required the district court to apply the tried and trusted method of substantive due process analysis.
*1171 B
Log Cabin’s due process challenge required the district court to begin by “carefully formulating the interest at stake.” Glucksberg, 521 U.S. at 722, 117 S.Ct. 2258. Because Log Cabin alleged that 10 U.S.C. § 654 violates substantive due process, this first step calls for examining the statutory language, see Glucksberg, 521 U.S. at 723, 117 S.Ct. 2258.[1] Taking close account of that language, a substantive due process challenge to section 654 presented the question whether the due process clause protects the right of a member of the armed forces to do any of the following without being discharged: (1) to engage in, to attempt to engage in, or to solicit another to engage in homosexual acts without demonstrating that such conduct is (to simplify for brevity) unusual for the service member, uncoerced, and non-disruptive to the military; (2) to state that he is a homosexual or bisexual and also to engage in, to attempt to engage in, to have the propensity to engage in, or to intend to engage in homosexual acts; or (3) to marry or to attempt to marry a person known to be of the same biological sex. Put simply, the substantive due process question raised by Don’t Ask, Don’t Tell was whether a service member possesses a right to serve in the military when he is known to engage in homosexual conduct or when he states that he is a homosexual.
Having carefully described the asserted right, the next question is whether the right is manifested in our Nation’s history, traditions, or practices. A trusted guide for this analysis is past decisions of the courts, which have repeatedly approved the very actions that Log Cabin contends are unconstitutional. As our court recognized in 1997, “[f]or nearly twenty years we have upheld the constitutionality of the military’s authority to discharge service members who engage in homosexual acts.” Philips v. Perry, 106 F.3d 1420, 1425 (9th Cir.1997); see id. at 1425-27 (summarizing eases). Affirming a discharge under section 654 in Philips, we observed that “this court has consistently held that regulations of the nature at issue here ... are constitutional” and noted that “[e]very other circuit to address this issue is in accord, *1172 upholding against constitutional challenge the authority of the military to discharge those members who engage in homosexual conduct.” Id. at 1427 & n. 12 (emphasis omitted) (citing decisions of the Second, Tenth, D.C., and Federal Circuits); see, e.g., Thomasson v. Perry, 80 F.3d 915, 927-31, 934 (4th Cir.1996) (en banc); Dronenburg v. Zech, 741 F.2d 1388, 1397-98 (D.C.Cir.1984).
Courts have rejected such challenges on equal protection as well as due process grounds. See, e.g., Able v. United States, 155 F.3d 628, 635-36 (2d Cir.1998); Richenberg v. Perry, 97 F.3d 256, 260-62 (8th Cir.1996); Steffan v. Perry, 41 F.3d 677, 686-87 (D.C.Cir.1994) (en banc); Ben-Shalom v. Marsh, 881 F.2d 454, 464-65 (7th Z Such equal protection decisions are instructive here: The mere focus on equal protection rather than on due process in such cases confirms that the right asserted here has not been viewed as part of the liberty protected by due process. See Flores, 507 U.S. at 303, 113 S.Ct. 1439 (“The mere novelty of ... a claim is reason enough to doubt that 'substantive due process’ sustains it.”). Moreover, “substantive due process and equal protection doctrine are intertwined for purposes of equal protection analyses of federal action” because the Fifth Amendment’s equal protection guarantee is grounded in its due process clause. Philips, 106 F.3d at 1427 (internal quotation marks omitted).
These decisions, all of them recent by historical standards, span the Nation and belie any claim that the right asserted by Log Cabin is deeply rooted in our history or traditions. Indeed, “the alleged right certainly cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental” when no court had held (until the district court did here) that there is such a fundamental constitutional right. Flores, 507 U.S. at 303, 113 S.Ct. 1439 (internal quotation marks omitted).
C
The district court in this case never contended that the right asserted by Log Cabin has deep roots in our history, tradition, or practices, nor in a line of cases stretching an appreciable distance into the past. Rather, the linchpin for the district court’s ruling was the Supreme Court’s decision just eight years ago in Lawrence.
Lawrence held that the liberty interest protected by the due process clause prohibits states from criminalizing private homosexual conduct by consenting adults. 539 U.S. at 578, 123 S.Ct. 2472. Nothing in Lawrence establishes a general fundamental right to engage in homosexual conduct. See, e.g., Muth v. Frank, 412 F.3d 808, 817 (7th Cir.2005) (“Lawivnce ... did not announce ... a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct----”); Lofton v. Sec’y of the Dep’t of Children & Family Servs., 358 F.3d 804, 817 (11th Cir.2004) (“[I]t is a strained and ultimately incorrect reading of Lawrence to interpret it to announce a new fundamental right.”).
Indeed, far from establishing a broad interest, the Supreme Court in Lawrence struck down with marksman-like precision an outlier criminal statute and expressly emphasized the limitations of the liberty interest guiding its holding:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.
*1173 539 U.S. at 578, 123 S.Ct. 2472; see Lofton, 358 F.3d at 815 (“Lawrence’s holding was that substantive due process does not permit a state to impose a criminal prohibition on private consensual homosexual conduct”). The case did not address the military context, did not establish a right to continued employment for those engaged in proscribed conduct, and did not address how homosexual conduct might be addressed outside a criminal context. The opinion does not prescribe heightened scrutiny. These limitations make clear that Lawrence does not establish that a member of the armed forces has a constitutionally protected right to engage in homosexual acts or to state that he or she is a homosexual while continuing to serve in the military.
To be sure, Lawrence contained broad language on personal autonomy. See, e.g., 539 U.S. at 562, 123 S.Ct. 2472 (“Liberty protects the person from unwarranted government intrusions into a dwelling or other private places.... Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct.”). But this broad language does not constitute “the careful[] formulation” of “the interest at stake” in this case and cannot, under Supreme Court precedent, be “transmuted” into the new fundamental right claimed by Log Cabin. Glucksberg, 521 U.S. at 722, 726, 117 S.Ct. 2258. In the end, careful application of the Supreme Court’s “established method” in substantive due process cases shows that Lawrence did not establish any fundamental right — let alone any right relevant to the Don’t Ask, Don’t Tell policy in the military.
D
Because Lawrence does not change the scrutiny applicable to policies regarding personnel decisions in the military, section 654 should have been upheld if it was “rationally related to legitimate government interests.” Glucksberg, 521 U.S. at 728, 117 S.Ct. 2258. When enacting section 654, Congress put forth the legitimate interests of military capability and success (among others), see, e.g., 10 U.S.C. § 654(a)(6)-(7), (13)-(15), and Congress could have rationally concluded that the statute served those interests, as reflected in the considerable evidence before it, see Philips, 106 F.3d at 1422-23; Thomasson, 80 F.3d at 922-23. If we had been able to reach the merits in this case, I would have been obliged to vote to reverse.[2]
*1174 III
“[J]udicial self-restraint requires” federal courts “to exercise the utmost care whenever we are asked to break new ground” in the field of substantive due process. Flores, 507 U.S. at 302, 113 S.Ct. 1439 (internal quotation marks omitted). This note of caution is especially important in cases such as this one, where moral and personal passions run high and where there is great risk that “the liberty protected by the Due Process Clause [will] be subtly transformed into the policy preferences” of unelected judges. Glucksberg, 521 U.S. at 720, 117 S.Ct. 2258. The Constitution entrusts to “public debate and legislative action” the task of identifying and protecting rights that are not rooted in our constitutional text, history, or traditions. Id. This case involves precisely such a right, and legislative action achieved the goals pursued in this lawsuit. That was the proper resolution: although Log Cabin had every right to bring this suit, only Congress — not the courts — had the authority under our Constitution to vindicate Log Cabin’s efforts here.
In this highly charged area, we constitutionally inferior courts should be careful to apply established law. Failure to do so begets the very errors that plagued this case. That failure culminated in a ruling that invalidated a considered congressional policy and imposed a wholly novel view of constitutional liberty on the entire United States. The Supreme Court’s cases tell us to exercise greater care, caution, and humility than that. Indeed, our constitutional system demands more respect than that. When judges sacrifice the rule of law to find rights they favor, I fear the people may one day find that their new rights, once proclaimed so boldly, have disappeared because there is no longer a rule of law to protect them.

. As relevant, section 654 provided:
A member of the armed forces shall be separated from the armed forces under regulations prescribed by the Secretary of Defense if one or more of the following findings is made and approved in accordance with procedures set forth in such regulations:
(1)That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the member has demonstrated that—
(A) such conduct is a departure from the member's usual and customary behavior;
(B) such conduct, under all the circumstances, is unlikely to recur;
(C) such conduct was not accomplished by use of force, coercion, or intimidation;
(D) under the particular circumstances of the case, the member’s continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and
(E)the member does not have a propensity or intent to engage in homosexual acts.
(2) That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.
(3) That the member has married or attempted to marry a person known to be of the same biological sex.
10 U.S.C. § 654(b).

. So too for the district court's holding that Don't Ask, Don't Tell on its face violates the First Amendment. I do not address this ruling at length because it was little more than a follow-on to the district court’s due process ruling. The district court’s substantive due process analysis focused on section 654(b)(1), which concerns homosexual acts, whereas its First Amendment analysis looked to section 654(b)(2), which concerns statements made by service members. The district court concluded that if the "acts prong” in section 654(b)(1) violates substantive due process, then the limitation on speech in section 654(b)(2) "necessarily fails as well” under the First Amendment because that provision limits speech in support of an unconstitutional objective. 716 F.Supp.2d at 926. As already explained, in my view the substantive due process challenge could not have succeeded here. Moreover, the district court's ruling squarely conflicted with our own decision just fourteen years ago in Holmes v. California Army National Guard, which rejected the argument that section 654(b)(2) violates the First Amendment. 124 F.3d 1126, 1136 (9th Cir.1997). The district court believed that Holmes’s "foundations ... all have been undermined by Lawrence," 716 F.Supp.2d at 926, even though Lawrence did not involve the First Amendment and did not even transform the doctrine it did involve (due process). Lawrence could hardly be taken to undermine the established principle that the First Amendment does not prohibit the use of speech as evidence of the facts admitted. See Holmes, 124 F.3d at 1136. Because section 654(b)(1) has a plainly legitimate sweep, section 654(b)(2) may constitutionally be used to identify those within that sweep. See Wash. State Grange v. Wash. State Republican Party, *1174 552 U.S. 442, 449 n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (First Amendment facial challenge requires a showing that "a substantial number of [the challenged statute's] applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep”) (internal quotation marks omitted).